**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **In Re:** | ) | |
| | ) | **Case No. 19-10653-R** |
| **INNOVA GLOBAL LTD., et al.,** | ) | |
| | ) | |
| **Debtors in a Foreign Proceeding.** | ) | **Chapter 15** |

### OBJECTION TO MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES
(Sale of Power Filters, Inc.)

NXTNANO, LLC ("NXTNANO")[1] objects to the *Motion for Authority to Sell Property of the Estate Free and Clear of All Liens and Encumbrances* ("Motion to Sell") filed in this case May 16, 2019 (Doc. 94), and in support thereof alleges and states as follows:

### Statement of Relevant Facts

1.      The Motion to Sell seeks authority to sell property of the Estate pursuant to the terms of an Asset Purchase Agreement ("APA") with an effective date of May 14, 2019, between PRICEWATERHOUSECOOPERS INC., in its capacity as court-appointed receiver ("Receiver") and Power Filters, Inc., for the sale of all of the assets of Debtor Braden Manufacturing, L.L.C. ("Braden") for the sum of Fifty-Five Thousand Fifty-Nine and no/100 Dollars ($55,059), less and except:

1.1.      Any inventory identified by Braden as packed and ready for shipment related to purchase order received prior to the date of the Receivership Order;

1.2.      cash, bank accounts, negotiable instruments, accounts receivable, prepaid expenses, insurance payments and deposits and credits;

1.3.      business records and documents related to the corporate organiztion of Braden; and,

---

[1]NXTNANO is a creditor of debtor, and therefore has standing to object to the Motion to Sell. *In re Bacigalupi, Inc.*, 60 B.R. 442, 446 (B.A.P. 9th Cir. 1986).

        1.4.    four (4) Canon copiers and associated accessories. *See*, Motion to Sell (Doc. 94) Exhibit "1" at paragraph 1.2 and Exhibit "2" at paragraph 1.

    **2.**    Prior to entry of the APA, NXTNANO had offered to pay Receiver Fifty Thousand and no/100 Dollars ($50,000) for all of Braden's manufacturing, QC, maintenance and material handling equipment, and expressed to Receiver that NXTNANO was also interested in purchasing Braden's inventory and branding. *See*, *Affidavit of Justin Volpe*, attached as Exhibit "1" to this Objection, at paragraphs 2, 3, 5 and 7.

    **3.**    During discussions between NXTNANO and Receiver, NXTNANO requested that Receiver provide a list of the assets that were being sold to allow NXTNANO to make a more informed bid for the property. Receiver failed and/or refused to provide such a list. *See*, Exhibit "1", at paragraph 3.

    **4.**    April 24, 2019, Receiver informed NXTNANO that Receiver "determined that another offer has incremental benefits to the estate greater than that offered by NXTNANO." *See*, Exhibit "1", at paragraph 6.

    **5.**    May 16, 2019, Receiver filed the Motion to Sell, setting forth that the sale was a total asset sale, including inventory and goodwill.

    **6.**    Had Receiver advised NXTNANO that Receiver was selling all assets of Braden, including its inventory and goodwill, NXTNANO would have made an offer prior to the effective date of the APA well above Fifty-Five Thousand Fifty-Nine and no/100 Dollars ($55,059). *See*, Exhibit "1", at paragraph 8.

    **7.**    NXTNANO is ready willing and able to purchase the assets of Braden set forth in the APA for the sum of Three Hundred Thousand and no/100 Dollars ($300,000), pursuant to the terms of the APA, less and except the provision contained in paragraph 2 of the *Amendment to Asset Purchase Agreement*. *See*, Exhibit "1", at paragraph 9.

    **8.**    NXTNANO may be willing to abide by the provisions of paragraph 2 of the *Amendment to Asset Purchase Agreement* if provided information regarding the referenced lease,

and the terms of that lease do not materially decrease the value of the assets purchased. *See*, Exhibit "1", at paragraph 10.

     **9.**    As evidence of NXTNANO's commitment to purchase the property, NXTNANO has executed an Asset Purchase Agreement and delivered same to Receiver. *See*, Exhibit "1", at paragraph 11 and Exhibit "1.1" thereto.

### Argument and Authority

Factors bearing on the Court's determination whether to approve the sale of property outside the ordinary course of business under 11 *U.S.C.* § 363(b), "include '1) whether there was any improper or bad motive involved; 2) whether the price is fair and reasonable and whether the transaction occurred at an arm's length; and 3) whether there were adequate sales procedures, including proper exposure to the market and fair and reasonable notice to all parties in interest.'" *In re Moreno*, 554 B.R. 504, 509–10 (Bankr. D.N.M. 2016) (*quoting*, *Premier Concrete,* 2010 WL 1780046 at *2). Application of these factors establishes that the Motion to Sell should be denied.

First, Receiver has wholly failed to establish what, if any, measures it took to market Braden's assets, what if any attempts were made to expose the sale of Braden's assets to the market, and by seeking and obtaining an expedited hearing upon limited notice, Receiver has failed to provide reasonable notice to all parties in interest. Second, and most glaringly, is that the price is not fair and reasonable. NXTNANO is ready willing and able to purchase the property for Three Hundred Thousand and no/100 Dollars ($300,000). Nearly five and one-half (5½) times the price to be paid by Power Filters, Inc. These facts establish that there is no "sound business reason" for this sale.[2] As such, the Motion to Sell should be denied.

---

[2]Contrast *In re Moreno*, 554 B.R. 504, 510 (Bankr. D.N.M. 2016), in which the court found that the Trustee had established sound business reasons justifying the sale of the Property where: (1) the Trustee listed the Property with an experienced real estate broker for a significant period of time; (2) the Trustee gave notice of the Motion to Sell to all creditors and parties in interest; and (3) no other potential purchases made an offer to purchase the property.

Respectfully submitted,

**JAMES, POTTS & WULFERS, INC.**


By:   s/Shannon Davis
       Shannon Davis, OBA #15752
       401 South Boston Avenue, Suite 2600
       Mid-Continent Tower
       Tulsa, Oklahoma 74103-4015
       (918) 584-0881 (*telephone*)
       (918) 584-4521 (*facsimile*)
       sdavis@jpwlaw.com

*Attorneys for NXTNANO, LLC*

## CERTIFICATE OF SERVICE

This certifies that on May 24, 2019, I electronically transmitted the above and foregoing instrument for filing and for transmittal of a Notice of Electronic Filing through the CM/ECF system to all ECF registrants in this case:

| | |
|---|---|
| Sam G. Bratton | Lyle R. Nelson |
| Duane Brescia | Office of the United States Trustee |
| Kyle L. Dickson | Edward L. Ripley |
| Carson Kennedy | Esther Linkey Sivak |
| Heath E. Hardcastle | Alexander Sokolosky |
| John E. Howland | Steven W. Soule |
| Brian A. Kilmer | Marvin E. Sprouse |
| Chad J. Kutmas | Andrew R. Turner |
| Michael J. Lombardo | Christopher B. Woods |

I hereby further certify that on May 24, 2019, I served a copy of the above and foregoing instrument by depositing a copy in the United States mail, postage prepaid, on the following who are not registered participants of the ECF System:

Ann R. Carroll
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA  30309-3521

Power Filters, Inc.
7910 S.101st E. Ave.
Tulsa, OK  74133
ATTN:  Mark Schaffitzel

*s/Shannon Davis*
Shannon Davis

19623002.Objection to Sale.wpd

5

# EXHIBIT "1"

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

In Re:                                      )
                                            )        Case No. 19-10653-R
INNOVA GLOBAL LTD., et al.,                 )
                                            )
            Debtors in a Foreign Proceeding.  )      Chapter 15

<u>AFFIDAVIT OF JUSTIN VOLPE</u>

STATE OF OKLAHOMA        )
                         )  ss.
COUNTY OF ROGERS         )

Justin Volpe, of lawful age, being first duly sworn, upon oath states as follows:

1.      I am the General Manager of NXTNano, LLC ("NXTNano").  I have personal knowledge of the matters referred to in this affidavit.

2.      April 8, 2019, I contacted PRICEWATERHOUSECOOPERS INC. ("PWC") and advised that NXTNano was interested in Braden Manufacturing, L.L.C.'s ("Braden") inventory and equipment.

3.      April 11, 2019, I requested that PWC provide me a list of Braden's assets.  No such list was provided.

4.      April 16, 2019, I conveyed to PWC NXTNano's offer to purchase Braden's manufacturing, QC, maintenance and material handling equipment, for the sum of Fifty Thousand and no/100 Dollars ($50,000).

**EXHIBIT "1"**

5.      April 22, 2019, I informed PWC that NXTNano would like to also bid on some or most of Braden's inventory, but only if NXTNano would be allowed to purchase the equipment NXTNano had previously offered to purchase.

6.      April 24, 2019, PWC informed me it "determined that another offer has incremental benefits to the estate greater than that offered by NXTNano."

7.      April 25, 2019, I informed PWC that NXTNano was interested in purchasing Braden's name and logo and requested it provide information regarding same.  PWC failed to do so.

8.      If PWC had advised me that it was selling all assets of Braden, including its inventory and goodwill, NXTNano would have made an offer prior to May 14, 2019, well in excess of Fifty-Five Thousand Fifty-Nine and no/100 Dollars ($55,059).

9.      NXTNANO is ready willing and able to purchase the assets of Braden set forth in the APA for the sum of Three Hundred Thousand and no/100 Dollars ($300,000), pursuant to the terms of the APA less and except the provision contained in paragraph 2 of the *Amendment to Asset Purchase Agreement*.

10.      NXTNANO may be willing to abide by the provisions of paragraph 2 of the *Amendment to Asset Purchase Agreement* if provided information regarding the referenced lease, and the terms of that lease do not materially decrease the value of the assets purchased.

11.      Attached hereto as Exhibit "1.1" is a true and correct copy of an Asset Purchase Agreement for the purchase of Braden's assets and executed by NXTNano, which has been delivered this date to PWC.

Further your affiant sayeth not.

_____
JUSTIN VOLPE

Subscribed and sworn to before me this _2YH_ day of May, 2019.

_____
Notary Public

My commission expires:
_2 / 3 / 22_
My commission number:
_0 600 1376_

# EXHIBIT "1.1"

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement") is dated this ___ day of May, 2019 ("Effective Date"), by and between **PRICEWATERHOUSECOOPERS INC., LIT,** ("PWC"), solely in its capacity as court-appointed receiver (the "Receiver") of the eight debtors (the "Debtors") in the eight Chapter 15 cases that are being jointly administered by the United States Bankruptcy Court for the Northern District of Oklahoma (the "Bankruptcy Court"), under its Case No. 19-10653-R, based upon the Receivership Order that the Court of Queen's Bench of Alberta in the Judicial Centre of Calgary, Canada, entered on April 1, 2019 in Court File No. 1901-04589, and as the Debtors' Chapter 15 recognized foreign representative ("Seller"), and **NXTNANO, LLC ("Buyer")**.

1.     **SALE OF ASSETS.**

1.1     **Sale of Assets:**  Seller shall, subject to the terms and conditions of this Agreement, transfer and sell to Buyer all of the tangible assets (including but not limited to all machinery, furniture, fixtures and equipment, and inventory) that are owned by Braden Manufacturing LLC ("Braden") and that are located on (within or outside) the premises of the Braden Filter Manufacturing facility, at 5199 North Mingo, Tulsa, Oklahoma (the "Premises"), and all of the intangible assets that Braden owns (including but not limited to goodwill, and any interest that Braden owns in the tradenames "Braden Filtration" and "Bradenfilters," names similar thereto, technical data and part number data access, web sites, trademarks and patents) and that Braden used in the Braden Filtration business.  The tangible and intangible assets being sold, including but are not limited to the vehicles and equipment listed on Exhibit A, are referred to as the "Assets".  Buyer is not assuming any of Seller's liabilities or obligations.

1.2     **Excluded Assets:**  Seller shall retain and shall not sell or transfer to Buyer any inventory identified by Seller as packed and ready for shipment related to purchase orders received prior to the date of the Receivership Order nor to cash, bank accounts, negotiable instruments, accounts receivable, prepaid expenses, insurance payments and deposits and credits, business records and documents related to the corporate organization of Braden Manufacturing, LLC., or the interest, if any, of Braden in the following Canon copiers and associated accessories:

       iRC5255 win JME01779
       iRD5035 s/n GNW56362
       iRC5045 s/n GPQ55713
       iRC5051 s/n GQM14234

1.3     **Purchase Price:**  As consideration for the sale and transfer of the Assets, Buyer will pay to Seller the sum of Three Hundred Thousand and no/100 Dollars ($300,000.00) (the "Purchase Price").  Buyer shall deposit with Seller the sum of $5,500 upon the Effective Date of this Agreement.  Such deposit shall be non-refundable but shall be applied to the Purchase Price at Closing.

1.4     **Method of Payment:**  The balance of the Purchase Price shall be paid at



EXHIBIT

"1.1"

Closing in cash or cash equivalent. Payment shall be made against delivery of a bill of sale and such documents as are reasonably requested by Buyer to evidence the transfer of title to the Assets.

2.    **CLOSING.**  The closing of the transaction provided for in this Agreement (the "Closing") shall take place at a mutually agreeable location on a mutually agreeable date (the "Closing Date") not later than three (3) days after entry of the Bankruptcy Court's order approving the sale. At Closing, Seller shall execute and deliver to Buyer a special warranty bill of sale conveying the Assets to the Buyer free and clear of all right, title or interest of third parties claiming by, through or under Seller, as Receiver, but not otherwise. Seller shall further transfer to Buyer ownership of all web sites and password information, trademarks and patents.

3.    **CONDITION TO CLOSING.**  The obligation of Buyer and Seller to close the purchase and sale of the Assets is expressly conditioned upon receipt of an order authorizing such sale, free and clear of liens or other interests, except any liens or interests of the landlord of the Premises, entered by the Bankruptcy Court in Case No. 19-10653-R. Failure to obtain such an order within 60 days following the date of this Agreement shall entitle either party to terminate the Agreement by written notice to the other.

4.    **REPRESENTATIONS AND WARRANTIES OF SELLER.**  Seller makes the following representations and warranties:

4.1    **Authority:** Seller is the Receiver in Bankruptcy for Braden Manufacturing, LLC and has the authority to enter into this Agreement subject to subsequent approval of the Bankruptcy Court.

4.2    **Authority:** This Agreement is legally binding and enforceable against Seller in accordance with its terms. This Agreement and all actions contemplated by this Agreement do not violate the provisions of any agreement, judgment, order, ruling or regulation by which Seller is bound or which affects Seller.

5.    **REPRESENTATIONS AND WARRANTIES OF BUYER.**  Buyer makes the following representations and warranties:

5.1    **Buyer's Organization and Good Standing:** Buyer is a corporation duly organized and validly existing under the laws of the State of Oklahoma.

5.2    **Buyer's Authority:** The execution and delivery of this Agreement by Buyer, and the performance by it of its obligations hereunder and with respect to the transactions contemplated, have been duly and validly authorized. This Agreement is legally binding and enforceable against Buyer in accordance with its terms.

6.    **MISCELLANEOUS.**

6.1    **Expenses:** Each party to this Agreement shall bear and pay its own respective costs and expenses in connection with the preparation, execution and delivery of this Agreement and

the transactions contemplated herein.

6.2 **Use of Names:** To the extent owned by Braden, Buyer and any of its present or future affiliates shall have the exclusive right to use the name "Braden Filtration" or names similar thereto that Braden used in the Braden Filtration business, and all product names used in the past or present in connection with Braden's filter business. Buyer shall have the right to represent that it is carrying on business in succession to Braden Manufacturing LLC's filter business.

6.3. **Release of Receiver's Rights:** Effective as of the date of the closing under Section 2, above, PWC releases all of its rights as Receiver for Braden and all of Braden's rights to occupancy of the Premises and all of their rights relative to the Premises that are created under any lease of the Premises.

6.4. **Expidated Approval of Sale:** PWC shall seek to have the Bankruptcy Court consider its sale to Buyer under the APA on an expedited basis.

7. **CONDITION OF ASSETS.** The Seller agrees to sell and convey the Assets to the Buyer, and the Buyer agrees to purchase the Assets from the Seller in the condition in existence on the date of Closing. The Assets are sold to Buyer "AS IS, WHERE IS", and with all faults. The Seller specifically disclaims any and all warranties concerning the Assets, including, but not limited to, the implied warranties of merchantability or fitness for a particular purpose. The Buyer has inspected the Assets and accepts the Assets in their current condition for all purposes.

8. **ENTIRE AGREEMENT; MODIFICATIONS AND WAIVER.** This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements, representations and understanding of the parties. No amendment to this Agreement shall be binding unless executed in writing by the parties. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a continuing waiver or a waiver of any other provisions, whether or not similar. No waiver shall be binding unless executed in writing by the party making the waiver.

9. **NOTICES, ETC.** All notices, requests, demands and other communications shall be in writing and shall be deemed to have been duly given if delivered or mailed first class, postage prepaid, to:

| | |
|---|---|
| If to Seller, to: | PricewaterhouseCoopers Inc., LIT |
| | 111 5th Avenue SW, Suite 3100 |
| | Calgary AB T2P 5L3 |
| | ATTN: Liam Murphy |
| | |
| If to Buyer, to: | NXTNano, LLC |
| | c/o Shannon Davis |
| | JAMES, POTTS & WULFERS, INC. |
| | 401 South Boston Avenue, Suite 2600 |
| | Tulsa, OK 74103 |

10.     **COOPERATION OF PARTIES.**  The parties shall, at and from time to time as reasonably necessary after the Closing, take such action, including the execution and delivery of such documents as may be deemed necessary or appropriate to fully realize the intent of this Agreement.

11.     **GOVERNING LAW.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Oklahoma.

**PRICE WATERHOUSECOOPERS INC., LIT, as Receiver and Foreign Representative for Braden Manufacturing LLC**

By_____
Name: _____
Title: _____

"SELLER"

**NXTNano, LLC**

By_____
Name: _____Justin Volpe_____
Title: _____General Manager_____

"BUYER"

_Stacey Butler_

STACEY BUTLER
NOTARY
Comm. #06001376
Exp. 02-03-2022
PUBLIC
STATE OF OKLAHOMA

**EXHIBIT A**

<u>Assets</u>

- 2000 Dodge 150 Truck — VIN # 1B7HC16YXYS556409
- Toyota Propane Model Fork Lift — 42-6FGCU15 Serial Number 68198
- Toyota Propane Model Fork Lift — 8FGU30 Serial Number 12821
- Crown Stand Up Lift Model MX3 18-775 Type E with battery charger Serial Number 2G53080
- Hyster Model H300 — 087065 30,000 Lb Serial Number 91060053
- Time clock system
- 26 fire extinguishers
- Dock leveler
- Amrstron automatic drainer-coalescer Shelving for material storage
- 2 stage horizontal coalesce separator
- Power sweeper
- Aero flow test station for filters
- Heat measuring thermostat
- Stencil cutting machine
- Infra-pak sidewinder 3 stretch wrapper low angle
- Air compressor model EP25
- Tooling for filters PFS-4 & coalescing frames Ingersoll-rand DXR 150 refrigerated air dryer
- Tenant 5700 XP-700D floor scrubber
- Ultra sonic seal model HVS-501 hand held ultrasonic plastics
- Fleetwood conveyers
- Two part dispense system w/jib & tool balancer
- Pluraform dispensing system
- Pleater for tri-cell 95 w/stop glue option
- Sts mold for filler plastic parts
- Pot Devin 36inch glue type NTZ machine 1/3 HP 115 Volt
- Modification controls polyurethane dispensing equipment
- Narrow aisle reach truck crown model RD 5020-30
- Ext "new" air filter housing design & tools
- 2 - Spot weld rocker rite, rapid fire 36 inch throat w/intertron
- Bulk container mixer, 2HP motor, single 6 inch dia propeller, 33 inch shaft
- Pulseline manufacturing equipment from genuine machine design
- 4 inch please filter stabilizer — tooling
- Digital stiffness tester — Gurley Precision
- Ultra sonic seal welder from MFG HEPA filters w/titanium horn
- Progressive tooling tricel clip